UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SUNITHA GUNTIPALLY, <br><br> Defendant. | Case No. 16-CR-00189-LHK-1 <br><br> **ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA** <br><br> Re: Dkt. No. 296 |

Before the Court is Defendant Sunitha Guntipally's ("Defendant") motion to withdraw her guilty plea. ECF No. 296. For the reasons set forth below, the Court DENIES Defendant's motion.

## I.    BACKGROUND

### A. Factual Background

On October 27, 2014, the government filed a criminal complaint against Defendant; her husband Venkat Guntipally ("Venkat"); Pratap Kondamoori ("Kondamoori"); and Sandhya Ramireddi ("Ramireddi"). ECF No. 1. Broadly, the complaint alleged that the codefendants had conspired to commit visa fraud over a period of several years. *Id.*

Shortly thereafter, Defendant retained attorney Paul Meltzer to defend her in the case.

ECF No. 315, Declaration of Paul B. Meltzer ("Meltzer Decl."), ¶ 7. Meltzer first appeared on November 19, 2014. ECF No. 37. Defendant's husband, Venkat, retained Peter Leeming to defend him. ECF No. 316, Declaration of Peter A. Leeming ("Leeming Decl."), ¶ 1.

The government then "provided extensive discovery." Meltzer Decl. ¶ 8. Meltzer reviewed the discovery with Defendant, Venkat, and Leeming. *Id.*; *see* Meltzer Decl., Ex. 2 (emails concerning "a long and detailed presentation" by the government, which Meltzer shared with Defendant); *see also* 11/29/17 Tr. 3:13-4:9 (government discussing at Defendant's sentencing the parties' attempts "at pre-indictment resolution with initial pre-indictment production of significant discovery"); ECF No. 314, Declaration of Jonas Lerman ("Lerman Decl."), ¶ 2.

Meltzer and Leeming worked closely with each other and met with their clients together at Defendant's and Venkat's behest, according to Meltzer: "The clients wanted their lawyers to work together. Mrs. Guntipally told me that she wanted her husband present for meetings, and the Guntipallys scheduled meetings with me and Mr. Leeming so that they could both attend." Meltzer Decl. ¶ 8; Leeming Decl. ¶ 9 ("Mrs. Guntipally and [Venkat] regularly met with both Mr. Meltzer and me at their request.").

Defendant communicated with Meltzer in English, both orally and in more than 100 pages of emails in the record. *See* Meltzer Decl., Exs. However, Defendant "would occasionally ask [Venkat] to interpret a particular word or phrase for her, which he did." Meltzer Decl. ¶ 10. Otherwise, Defendant read her plea agreement in English, researched analogous criminal cases in English, read the draft PSR in English, and wrote detailed objections in English to the draft PSR in English. Meltzer Decl., Ex. 6; 5/3/17 Tr. 3:18-23; 16:4-6.

When Meltzer and Leeming first reviewed the government's discovery with Defendant and Venkat, Defendant "claimed that she was not guilty of any of the conduct alleged and that all the witnesses were lying." Meltzer Decl. ¶ 9; Leeming Decl. ¶ 4. However, Defendant could not "identify witnesses or evidence that would help rebut the allegations and establish a defense." Meltzer Decl. ¶ 9. Meltzer "told [Defendant] that she could go to trial," but because he thought trial would disadvantage Defendant, Meltzer recommended against it. *Id.* Defendant and Venkat

2

eventually "agreed that it was in their interest to negotiate a pre-indictment resolution of the case." Leeming Decl. ¶ 4.

Still, Defendant was concerned about the possible immigration consequences of a conviction or guilty plea, given that Defendant is not a United States citizen. Meltzer Decl. ¶ 13; Leeming Decl. ¶ 4. As a result, Meltzer referred Defendant to immigration attorneys, and Defendant retained one. Meltzer Decl. ¶ 13. The immigration attorney helped Meltzer and Leeming "explore potential immigration-friendly outcomes" for Defendant. *Id.*; *see also* Meltzer Decl., Ex. 3 (emails containing immigration attorney's advice). Although Meltzer made settlement offers designed to protect Defendant from adverse immigration consequences, the government would not agree. *See* Meltzer Decl., Ex. 3 (September 16, 2015 email explaining that government had rejected immigration-friendly settlement offers); Meltzer Decl., Ex. 6 (October 16, 2015 email to government arguing for a plea with a range of 3-24 months).

On May 5, 2016, a grand jury returned an indictment against Defendant, Venkat, Kondamoori, and Ramireddi. ECF No. 112. The indictment charged Defendant with (1) one count of conspiracy to commit visa fraud, use of false documents, mail fraud, obstruction of justice, and witness tampering in violation of 18 U.S.C. § 371; (2) ten counts of visa fraud in violation of 18 U.S.C. § 1546(a) and aiding and abetting visa fraud in violation of 18 U.S.C. § 2; (3) seven counts of use of false documents in violation of 18 U.S.C. § 1001(a)(3) and aiding and abetting use of false documents in violation of 18 U.S.C. § 2; (4) four counts of mail fraud in violation of 18 U.S.C. § 1341 and aiding and abetting mail fraud in violation of 18 U.S.C. § 2; (5) three counts of witness tampering in violation of 18 U.S.C. § 1512(b)(3); and (6) one count of witness tampering in violation of 18 U.S.C. § 1512(b)(3) and aiding and abetting witness tampering in violation of 18 U.S.C. § 2. *Id.*

On May 6, 2016, at her arraignment, Defendant pled not guilty to all counts. ECF No. 114.

After indictment, Meltzer and Defendant continued to discuss resolution of the case and to negotiate possible plea agreements with the government. Meltzer Decl. ¶ 20; Leeming Decl. ¶ 5. However, Meltzer reported, "We have been through 4 US Attorneys and none of them have shown

any interest in working out an immigration friendly plea. After consultation with your immigration counsel I proposed several alternatives. The US Attorney rejected them all." Meltzer Decl., Ex. 3 (March 30, 2017 email to Defendant). In April 2017, the government offered a plea to Count 1 for violating 18 U.S.C. § 371. Meltzer summarized his conversations with Defendant regarding that plea in an April 5, 2017 email to Defendant: "I have told you to expect a term of imprisonment. Cooperation could reduce your sentence." Meltzer reminded Defendant, "You have told me that you want to plead guilty and cooperate and I agree with that decision." Meltzer Decl., Ex. 3.

On April 13, 2017, Defendant, accompanied by Meltzer, met with the government for a proffer session. Meltzer Decl. ¶ 17; Lerman Decl. ¶ 5; Lerman Decl. Ex. 3. A Telugu translator, Kavitha Herle, was present. *Id.* At the proffer session, Defendant stated that she and Venkat had founded DS Soft Tech and Equinett, which were labor staffing companies. *Id.* Through those companies, Defendant "filed H-1B visas for her foreign worker beneficiaries" through the staffing companies and claimed that the "workers had positions/projects at end clients when in actuality none of this was true." *Id.* To do so, Defendant submitted fraudulent I-129 petitions. *Id.* Defendant also admitted that once she learned of the government investigation into the visa fraud scheme, Defendant created false documents to hide her conduct and coached visa beneficiaries to lie to government agents. *Id.* Defendant stated that she could provide the government with information about other companies involved in similar visa fraud. *Id.*

Codefendants Ramireddi, Kondamoori, and Venkat pled guilty in April 2017. Specifically, Ramireddi pled guilty on April 17, 2017. ECF No. 153. On April 24, 2017, Kondamoori and Defendant's husband Venkat both pled guilty. ECF Nos. 156, 158.

On May 2, 2017, Defendant and the government entered into a written plea agreement. ECF No. 161 ("Plea Agreement"); *see also* ECF No. 165 (plea agreement with interpreter's attestation that she had translated the agreement into Telugu for Defendant). The agreement "was the subject of intense negotiation between the government, [Defendant], the immigration attorneys and [Meltzer]." Meltzer Decl. ¶ 21; Leeming Decl. ¶ 5.

4

In the plea agreement, Defendant agreed to plead guilty to Count 1 of the indictment, which charged Defendant with conspiracy to commit visa fraud, false statements, mail fraud, obstruction of justice, and witness tampering in violation of 18 U.S.C. § 371. Plea Agreement at 1–2. Defendant affirmed "that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true." *Id.* at 2. Among other things, Defendant admitted that since 2010, she had served as the vice president of DS Soft Tech and Equinett, staffing companies that purport to seek to fill temporary positions with H-1B workers. *Id.* at 2–3. Defendant admitted that both companies had "an ongoing business relationship" with SISL Networks, which Kondamoori owned and operated. *Id.* Defendant admitted that she "ran the operations of [DS Soft Tech and Equinett] on a daily basis, and I directed and controlled the activities of the employees in all their tasks." *Id.* at 3.

Further, Defendant admitted that while operating DS Soft Tech and Equinett, she submitted "more than 100 phony H-1B visa applications" for nonimmigrant beneficiaries to work at end-client companies that "either did not exist or never received the proposed H-1B workers." *Id.* at 3. Defendant offered examples of clients for whom she had submitted fraudulent I-129 petitions. *Id.* at 4. The scheme enabled Defendant and Venkat to create a pool of H-1B beneficiaries to later place at legitimate positions, which gave Defendant "an unfair advantage" over other employment staffing firms. *Id.* at 4.

Defendant also admitted that after she learned of the government's investigation, Defendant created false documents and encouraged others to "mislead the agents, conceal the conspiracy, and otherwise obstruct the government's investigation." *Id.* at 4–5. For example, Defendant gave a visa beneficiary, A.M., false documents to "make it appear that A.M. had worked at one time with purported end-client company Technia Energy, even though, as I well knew, A.M. had never worked there." *Id.* Defendant stated, "I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested." *Id.* at 10.

On May 3, 2017, Defendant entered a plea of guilty as to Count 1 of the indictment. ECF

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

United States District Court
Northern District of California

No. 163. Herle, the Telugu interpreter, was present at the hearing. *Id.* Herle affirmed that she had translated "everything" in the plea agreement for Defendant. 5/3/17 Tr. 2:10-20. Meltzer told the Court that Defendant "reads English without any problems at all" and "she's seen every draft of this plea agreement and we've discussed every draft of this plea agreement." *Id.* 3:18-23. Defendant affirmed to the Court that she had reviewed the plea agreement translated into Telugu with Herle and had read the plea agreement in English. *Id.* 15:25-16:6. Defendant affirmed that Meltzer had answered her questions about possible defenses and trial, and then affirmed that she was satisfied with Meltzer's services. *Id.* 16:20-17:4. Defendant did not object to any of Meltzer's characterizations about Defendant's understanding of the plea agreement. Defendant also affirmed that her plea was voluntary and that she freely gave up her rights to a jury trial and to plead not guilty. *Id.* 17:12-20:11. After the government made a detailed offer of proof, Defendant affirmed that the facts were true and correct and pled guilty. *Id.* 28:18-29:21. The Court set a sentencing date of November 29, 2017. ECF No. 163.

After Defendant's plea, Defendant and Meltzer met with the government on June 29, 2017 for a second proffer session. Meltzer Decl. ¶ 17; Lerman Decl., Ex. 4. Defendant gave the government three emails related to other companies that Defendant claimed were also involved in visa fraud. Lerman Decl., Ex. 4. At the proffer session, the government questioned whether, after her guilty plea, Defendant had continued to interfere with evidence or witnesses. *Id.* Meltzer repeatedly stopped the proffer to confer with Defendant regarding the government's questions. *Id.*

The next day, Meltzer wrote to Defendant and reminded her that at her first proffer on April 13, 2017, "You admitted that you knowingly engaged in fraud by filing false petitions for jobs with fake businesses. You also agreed that you counseled people to lie to investigators. That meeting went pretty well." Meltzer Decl., Ex. 5. However, at the June 29, 2017 proffer, the government appeared to "have information from two sources that you contacted your codefendants through others, both by having people call and meet with the codefendants." *Id.* Meltzer continued, "I am told that these people told the codefendants that they were contacting them at your request and substantial amounts of money was offered, both in the US and overseas, for the

codefendants to obstruct justice." *Id.* Meltzer concluded, "I am particularly concerned because there is a pattern of attempts to get witnesses to lie in this case. There are several witnesses who said you asked them to lie and we have discussed the details in several meetings." *Id.* Thus, Meltzer warned Defendant that she could face additional charges. *Id.*

In September 2017, Meltzer retained Dayle Carlson, a sentencing consultant and former United States Probation Officer, "to investigate and prepare mitigation" for Defendant's sentencing. Meltzer Decl. ¶ 24; ECF No. 317, Declaration of Dayle Carlson ("Carlson Decl."), ¶¶ 1, 3. Carlson interviewed Defendant four times in person without Meltzer present and spoke with Defendant over the telephone on several occasions. Carlson Decl. ¶ 5. According to Carlson, Defendant "sometimes rationalized her illegal conduct, but at no time did she deny the allegations to which she pled guilty." *Id.* ¶ 10. Carlson also attended Defendant's in-person interview with the U.S. Probation Officer, at which Defendant confirmed her acceptance of responsibility. *Id.* ¶¶ 12, 14. As discussed below, the PSR corroborates Carlson's recollection, and includes Defendant's written statement accepting responsibility.

On September 27, 2017, the Court sentenced Ramireddi. ECF No. 180. Ramireddi had pled guilty to Count 18 of the indictment, for use of false documents under 18 U.S.C. § 1001(a)(3). The Presentence Investigation Report ("PSR") for Ramireddi calculated a sentence range under the United States Sentencing Guidelines ("Guidelines") of 24-30 months in custody. 9/27/17 Tr. 44:15-47:25; 55:18-57:8.

At Ramireddi's sentencing, the Court granted the government's motion for a downward departure for substantial assistance because Ramireddi was the first of four defendants to plead guilty, the first to plead guilty, and the only codefendant to admit criminal conduct to law enforcement pre-indictment. *Id.* The Court also varied downward based on Ramireddi's role in the scheme, relative profit, cooperation with the government, and special circumstances. *Id.* Ramireddi was willing to testify against all three codefendants, including her brother, Kondamoori. *Id.* Ramireddi also participated in two proffer sessions during which she gave government agents her laptop and her brother's hard drive. *Id.*

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

United States District Court
Northern District of California

Within the scheme, Ramireddi only received a salary of between $1,000 and $2,300 per month for her crime, and did not otherwise benefit from the millions in profits Defendant and Venkat reaped. *Id.* Ramireddi also prepared documents used in 21 false I-129 documents, whereas Defendant signed over 100 false petitions. *Id.*

In terms of special circumstances, Ramireddi's parents gave her to her childless uncle and aunt to raise. *Id.* Ramireddi's aunt and uncle then married Ramireddi off at age 21 to a man 15 years her senior. *Id.* Ramireddi's husband died when Ramireddi's second daughter was only three months old. *Id.* In 2010, Ramireddi and her second daughter immigrated to the United States. *Id.* Ramireddi spoke limited English and had a difficult time finding a job in the United States. *Id.* Ramireddi was very submissive and engaged in the crime on the orders of her brother, Kondamoori, and superiors at work. *Id.* She was a clerical and administrative employee of Defendant and Venkat and did what she was told. *Id.*

The Court also noted that Ramireddi struggled financially to support her daughter in the United States. *Id.* Ramireddi struggled as a single, widowed mother in India of two daughters, and left the older daughter in India when Ramireddi immigrated. *Id.* Further, Ramireddi had never been arrested before. *Id.* She was 58 years old and suffered from generalized anxiety disorder, major depressive disorder of moderate severity, and mild cognitive impairment. *Id.*

Thus, the Court sentenced Ramireddi to 14 months in custody. ECF No. 182. The Court set a self-surrender date of November 29, 2017. *Id.*

On October 25, 2017, the Court sentenced Kondamoori. ECF No. 194. Kondamoori had pled guilty to Count 1 of the indictment, for conspiracy to commit visa fraud, mail fraud, false statements, obstruction of justice, and witness tampering. The PSR for Kondamoori calculated a Guidelines sentence range of 30-37 months in custody, and recommended a downward variance to a 24-month sentence. ECF No. 193. The PSR stated that although the Guntipallys "generated net profits from 2010 to 2014 of approximately $3.3 million and gross profits of approximately $15 million . . . Kondamoori was paid approximately $85,000 for the visa applications that he produced." *Id.* ¶ 16.

At Kondamoori's sentencing, the Court granted the government's motion for a downward departure for substantial assistance. 10/25/17 Tr. 28:23-25; 30:5-20. The Court also varied downward based on Kondamoori's role in the scheme, relative profit, cooperation with the government, and special circumstances. *Id.*

Specifically, Kondamoori timely pled guilty, which induced Defendant and Venkat to plead guilty. *Id.* Kondamoori gave the government details of Defendant's and Venkat's scheme beyond the details given by Ramireddi, and also offered reliable information about other matters of interest to the government. *Id.*

At the time of sentencing, Kondamoori was the primary caregiver for his wife, who suffers from schizophrenia and bipolar disorder. *Id.* Kondamoori's wife had been subject to 5150 institutionalization three times. *Id.* Kondamoori claimed that his daughter was born with autism and some mental retardation, which rendered her unable to care for Kondamoori's wife. *Id.* However, Kondamoori's daughter had graduated from college and was employed as a freelance graphic designer and engaged to be married. *Id.* Still, it was unclear whether Kondamoori's daughter could care for Kondamoori's wife. *Id.*

Thus, the Court sentenced Kondamoori to 20 months in custody. ECF No. 194. Kondamoori self-surrendered on February 16, 2018. ECF No. 216.

On November 1, 2017, U.S. Probation issued its PSR for Defendant. ECF No. 197. U.S. Probation later issued an amended PSR. ECF No. 204. In the PSR, Defendant submitted a written statement of acceptance of responsibility: "I accept full responsibility for my actions. Please see my Plea Agreement for details of my actions." *Id.* ¶ 52. Defendant continued, "I am very embarrassed and ashamed of my conduct. I knew better and should not have acted that way. When my offense was discovered, I panicked and tried to cover up my actions, which I regret." *Id.* At an interview with U.S. Probation, Defendant orally confirmed her acceptance of responsibility. Carlson Decl. ¶¶ 12, 14. Thus, U.S. Probation concluded that Defendant "has clearly demonstrated acceptance of responsibility for the offense." ECF No. 204 at ¶¶ 61–62.

Defendant reported a monthly income of $14,870 and total assets of over $1.3 million,

United States District Court
Northern District of California

including her residence and an investment property.  *Id.* ¶ 88.  Defendant reported almost

$300,000 in cash spread across nine different bank accounts in the United States and India and

over $37,000 in jewelry.  *Id.*  The PSR calculated a Guidelines sentence range of 46-57 months in

custody.  *Id.* ¶ 92.

On November 15, 2017, Defendant submitted her sentencing memorandum.  ECF No. 198.

Defendant argued for "a custodial sentence of no greater than 30 months in prison" given the

"extraordinary collateral consequences of [Defendant's] conviction."  *Id.* at 1.  Defendant attached

letters from her then 19 year old daughter and 16 year old son.  ECF Nos. 198-1, 198-2.  Meltzer's

sentencing memorandum explained that "[Defendant's] acceptance of responsibility is further

reflected by the nature of her plea.  [Defendant] admitted to a detailed description of her offense

conduct."  ECF No. 198 at 7.  Defendant agreed with the PSR's Guidelines calculation, but argued

for a below-Guidelines sentence based on (1) the victimless nature of Defendant's crimes; (2) the

collateral consequences of Defendant's conviction, including deportation and its resulting effect

on Defendant's family; (3) Defendant's lack of prior criminal history; and (4) the relatively short

sentences received by Ramireddi and Kondamoori.  *Id.* at 7–12.

On November 15, 2017, the government submitted its sentencing memorandum.  ECF No.

199.  The government recommended a mid-range custodial sentence of 52 months.  *Id.* at 1.

Defendant and the government stipulated to a monetary fine of $50,000.  *Id.* at 1.  The government

argued that Defendant "was the clear organizer and leader of the obstruction" and took "every

possible means, short of physical violence, to delay, retard, and otherwise obstruct the [criminal]

investigation."  *Id.* at 1–2.  The government argued that Defendant's obstruction conduct was

"extremely serious and fundamentally at odds with a sentence below the recommended Guidelines

range."  *Id.* at 3.  Further, Defendant had "lived a comfortable life" and "had every opportunity to

a live productive, law-abiding life in the United States," but instead chose to commit fraud.  *Id.* at

3.  The government argued that Defendant was "the most culpable" codefendant in the conspiracy

because she "designed and orchestrated it; she reaped the lion's share of its rewards; and she led

the effort to conceal it by obstructing justice."  *Id.* at 4.  Kondamoori and Ramireddi had lesser

roles in the conspiracy and cooperated with the government, which justified their comparatively lower sentences. *Id.*

On November 29, 2017, the Court sentenced Defendant to 52 months in custody. ECF No. 203. At sentencing, Defendant and the government informed the Court that although Defendant's staffing businesses—those Defendant admitted were involved in the visa fraud scheme—had closed, Defendant and Venkat continued to receive payments from the visa fraud scheme of approximately $3,000 per month. 11/29/17 Tr. 22:17-25:22.

In sentencing Defendant, the Court observed that Meltzer "made a good argument as to why the sentence should be 30 months." 11/29/17 Tr. 33:4-7. However, the Court then explained why Defendant merited a harsher sentence than Ramireddi and Kondamoori. 11/29/17 Tr. 32:4-42:24.

First, whereas Ramireddi received $1,000 to $2,300 per month from the scheme, and Kondamoori received $85,000-$90,000 from the scheme, Defendant made gross profits of at least $15 million and net profits of $3.3 million. *Id.* As a result, Defendant's personal wealth far exceeded her husband's income. *Id.* Defendant also continued to receive monthly payments from the visa fraud scheme at the time of sentencing. *Id.*

Second, Ramireddi was a clerical and administrative employee, whereas Defendant ran the daily operations of DS Soft Tech and Equinett and was the clear leader of the scheme. *Id.* Defendant signed and filed at least 125 fraudulent I-129 petitions, while Kondamoori signed approximately 24 fraudulent petitions, and Ramireddi signed false documents for only 21 fraudulent petitions. *Id.*

Third, both Ramireddi and Kondamoori had cooperated with the government. *Id.* Ramireddi was the only codefendant to cooperate before indictment, and had been willing to testify against the other codefendants, including her own brother, Kondamoori. *Id.* Kondamoori provided new details about the Guntipallys' scheme not provided by Ramireddi. *Id.* Kondamoori's timely plea also induced Defendant and Venkat to plead guilty. *Id.* Defendant had extensively obstructed justice by instructing H1-B workers to lie to governments agents and by

creating false documents. *Id.*

Fourth, whereas Ramireddi had been given up by her parents and struggled to support herself and her daughters in both India and the United States, Defendant lived a comfortable middle-class life and did not have a paid job until the visa fraud scheme. *Id.* Kondamoori also merited a downward variance for special circumstances as the sole caregiver for his wife, who suffers from schizophrenia. *Id.* Like Defendant, both Ramireddi and Kondamoori were likely to face deportation after their custodial sentences. *Id.*

The Court honored the parties' stipulation to a $50,000 fine, although the Court "would obviously have ordered more" absent the parties' agreement, given the scale of the scheme's profits. *Id.* 39:12-16. As for Defendant's sentence, the Court stated, "I would have considered the high end, 57 months. But in light of the considerations also raised by Mr. Meltzer about the impact to her family, I'm going to go with the government's recommendation of 52 months, which is the mid-range." *Id.* 42:18-24. The Court ordered Defendant to self-surrender on February 5, 2018. ECF No. 203. On the government's motion, the Court dismissed from the remaining 25 Counts against Defendant. *Id.*

On December 1, 2017, the Court entered judgment against Defendant. ECF No. 206.

On December 14, 2017, Defendant moved to substitute Grant Fondo, a partner at the law firm Goodwin Procter, as counsel in place of Meltzer. ECF No. 212. On December 15, 2017, the Court granted Defendant's motion to substitute Fondo as counsel. ECF No. 215.

On December 14, 2017, represented by Fondo, Defendant appealed her sentence to the Ninth Circuit Court of Appeals. ECF No. 213.

On November 16, 2017, Ramireddi filed an unopposed motion to extend her self-surrender date from November 29, 2017 to December 29, 2017 to enable her to receive follow-up treatment for eye surgery. ECF No. 200. On November 17, 2017, the Court granted Ramireddi's unopposed motion. ECF No. 201.

Then, on December 13, 2017, Ramireddi filed a second motion to continue her sentencing date, in the form of a pro se letter to the Court. ECF No. 209. Ramireddi stated, "I seek the

12

opportunity to delay my report date for my sentencing in light of the information that I received from my appointed counsel in this matter after my sentencing." ECF No. 209. Ramireddi claimed that her attorney "conducted no independent investigation on my behalf but merely read the Discovery provided by the Government." *Id.* Ramireddi attached an October 15, 2017 email from her counsel, Assistant Federal Public Defender Varell Fuller, sent after Ramireddi's sentencing, which stated:

> Dear Sandhya,
>
> I am sorry you are having a difficult time coming to terms with the sentencing outcome. It is not what I had hoped for. However, as we discussed, your advisory guideline range always involved the possibility of a custodial term. I advised you that I would ask for a halfway house and or home confinement, and I did just that at sentencing. The court however disagreed and believed a custodial term was warranted. As to the weight of the evidence against you, it was considerable. You were charged with, among other things, conspiracy to commit visa fraud and obstruction of justice. As I also advised, if you proceeded to trial, it was my assessment that you would most certainly have been convicted of the more serious charges, which were aggravated felonies. I understand your position was that you were simply doing what you were told. That however is not a defense. There is no research I conducted that I can provide you with, other than the discovery and evidence against you, and my assessment of the weight of the evidence against you. If you recall, I previously provided you with all the witness interviews of those individuals who would likely have testified against you. However, please call to discuss specifically what you need and I will have my office provide you with that information.

*Id.* at 2.

On December 13, 2017, the Court denied Ramireddi's second motion to continue her self-surrender date. ECF No. 210. The Court wrote, "Defendant's self-surrender date has already been continued once. If Defendant does not self-surrender as ordered, the Court will issue an arrest warrant." *Id.*

On December 27, 2017, two days before her self-surrender date, Ramireddi filed a third motion to continue her self-surrender date. ECF No. 219. Ramireddi stated that she had filed a motion to vacate her sentence under 28 U.S.C. § 2255. *Id.* Ramireddi asked the Court to continue her self-surrender date "until my motion to vacate the conviction is heard and disposed finally in

the ends of justice." *Id.* at 2.

That same day, on December 27, 2017, Ramireddi, filed her pro se § 2255 motion. ECF No. 225. Ramireddi argued that she pled guilty because her counsel was ineffective and further argued that she was "innocent of the alleged crime." *Id.* Ramireddi attached the same Fuller email that Ramireddi had attached to her December 13, 2017 request to continue her self-surrender date. *Id.*

On December 28, 2017, the Court denied Ramireddi's third motion to continue her self-surrender date. ECF No. 220. On December 29, 2017, the Court denied Ramireddi's § 2255 motion. ECF No. 223. Ramireddi did not appeal.

On January 25, 2018, Defendant again moved to substitute counsel. ECF No. 232. This time, Defendant asked to substitute S.H. Michael Kim of the law firm Womble Bond Dickinson in place of Fondo. *Id.* On January 25, 2018, Mark Schamel and Pascal Naples, also of Womble Bond Dickinson, filed applications for leave to appear *pro hac vice* on behalf of Defendant. ECF Nos. 233, 234. On January 25, 2018, the Court granted Defendant's motion to substitute Kim as counsel and granted Schamel's and Naples' *pro hac vice* applications. ECF Nos. 237, 238, 239.

On January 25, 2018, Defendant filed an ex parte motion for a stay of detention pending appeal. ECF No. 236. On January 29, 2018, the government filed an opposition to Defendant's motion. ECF No. 240. On January 30, 2018, the Court denied Defendant's motion for a stay of detention pending appeal. ECF No. 241.

On February 1, 2018, Defendant filed a motion in the Ninth Circuit for bail pending appeal. ECF No. 242. The government opposed Defendant's motion for bail pending appeal. On February 27, 2018, the Ninth Circuit denied Defendant's motion for bail pending appeal. ECF No. 248. In so doing, the Ninth Circuit concluded that even if the Ninth Circuit ruled in Defendant's favor, that decision was not likely to result in "a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* at 1–2. That same day, this Court ordered Defendant to self-surrender by March 2, 2018, and Defendant has been in custody

14

since that date.  ECF No. 249.

On March 15, 2018, Defendant filed a motion in the Ninth Circuit to expedite her appeal. Ninth Circuit Appeal 17-10533, Dkt. 18.  In the motion, Defendant stated that she "now submits that her plea agreement was the product of ineffective assistance of counsel, so she could seek to withdraw her guilty plea." *Id.* at 3.  On March 27, 2018, the Ninth Circuit denied Defendant's motion to expedite her appeal.  Ninth Circuit Appeal 17-10533, Dkt. 24.

On March 15, 2018, Defendant filed her opening brief in the Ninth Circuit.  Appeal 17-10533, Dkt. 19.  In that brief, Defendant asserted that her "guilty plea is invalid due to ineffective assistance of counsel; however, on direct appeal, there is no non-frivolous basis to challenge the guilty plea's validity." *Id.* at 12 n.3.  Defendant also asked the Ninth Circuit to vacate Defendant's sentence and remand for resentencing because this Court did not invite Defendant to allocute at sentencing.  *Id.* at 12, 14.

On August 22, 2018, in an unpublished decision, the Ninth Circuit vacated Defendant's sentence because this Court did not invite Defendant to allocute at her sentencing.  ECF No. 278; *United States v. Guntipally*, 735 F. App'x 432 (9th Cir. 2018).  The Ninth Circuit remanded to this Court for resentencing and did not address Defendant's ineffective assistance argument.  *Id.*  The Ninth Circuit's mandate issued on September 17, 2018.  ECF No. 282.

On June 13, 2018, while Defendant's appeal was pending, the Court sentenced Defendant's husband, Venkat.  Venkat had pled guilty to Count 1 of the indictment, for conspiracy to commit visa fraud, mail fraud, false statements, obstruction of justice, and witness tampering. In the PSR, Venkat reported, and U.S. Probation verified, that Venkat earns $12,000 per month at his current job.  *Id.* ¶ 90.  Venkat reported total assets of over $2.2 million, although Venkat agreed to forfeit $500,000 in his plea agreement.  *Id.* ¶ 95.  The PSR calculated a Guidelines sentence range of 30-37 months in custody, and recommended a low-end sentence of 30 months. ECF No. 271.  Shortly before, in a May 17, 2018 proffer session, Venkat claimed that because he was working a full-time job, his wife, Defendant, had primary responsibility for DS Soft Tech and Equinett, the visa fraud scheme entities.  Lerman Decl., Ex. 5 at 2–3.

United States District Court
Northern District of California

1    At Venkat's June 13, 2018 sentencing, Venkat's counsel stated that Venkat "has

2    acknowledged that his wife was the initiator of the scheme and that he is guilty." 6/13/18 Tr.

3    9:10-12.  The government agreed: "We absolutely admit that [Venkat] is less culpable than his

4    wife.  She was the clear leader, the mastermind of this scheme."  *Id.* 15:1-8.

5    However, the Court noted that Venkat shared in the scheme's profits, which exceeded $15

6    million gross and $3.3 million net.  Thus, his earnings dwarfed those of Ramireddi, who made as

7    little as $1,000 per month, and Kondamoori, who earned $85,000-$90,000.  Tr. 22:9-25:3.

8    Thus, on June 13, 2018, the Court sentenced Venkat to a low-end sentence of 30 months.

9    Tr. 28:18-30:10.  However, the Court delayed Venkat's self-surrender date a full year to June 14,

10   2019 to permit Venkat to remain at home while the Guntipallys' then 17 year old son finished his

11   last year of high school.  Tr. 20:11-19; 30:7-12.  By June 14, 2019, the Guntipallys' daughter will

12   be 21 years old and their son will be 18 years old and a legal adult like his sister.  As such, Venkat

13   is not yet in custody.

14   On September 21, 2018, the Court set Defendant's resentencing for November 21, 2018.

15   ECF No. 283.

16   On October 16, 2018, Defendant's counsel sent the government an email regarding a third

17   proffer session, which stated: "Cooperation: Ms. Guntipally is working with the Government, and

18   we would like to run a few things by you."  Lerman Decl., Ex. 6.  The government informed

19   Defendant's counsel that the government was not interested in Defendant's cooperation.  Id.

20   On November 8, 2018, Defendant filed a motion to continue Defendant's resentencing to

21   December 18, 2018, to which the government consented.  ECF No. 284.  On November 9, 2018,

22   the Court granted Defendant's consent motion to continue resentencing to December 18, 2018.

23   ECF No. 285.

24   On December 11, 2018, Defendant filed her supplemental sentencing memorandum.  ECF

25   No. 287.  Defendant "fully incorporate[d] the facts and arguments presented in her initial

26   sentencing memorandum."  *Id.* at 1.  Defendant closed the memorandum by stating, "[Defendant]

27   committed serious criminal activity for which she has accepted responsibility."  *Id.* at 9.

28

United States District Court
Northern District of California

On December 13, 2018, the government filed its response to Defendant's supplemental sentencing memorandum. ECF No. 288. The government noted that Defendant's statements in her Ninth Circuit briefs "attacking the validity of her guilty plea and threatening to withdraw her plea" might weigh against any acceptance of responsibility credit and "cast serious doubt on [Defendant's] contrition." *Id.* at 5.

On December 18, 2018, the day of Defendant's resentencing, the Court granted the request of Defendant's current counsel, Mark Schamel, to delay the resentencing hearing to provide additional time for Schamel to meet with Defendant. ECF No. 290; 12/18/18 Tr. 2:12-17.

At the resentencing hearing, Schamel stated, "[Defendant] has asked me to convey to the Court that she intends to move to withdraw her guilty plea, and we would like to postpone today's sentencing to allow that to happen." 12/18/18 Tr. 4:12-15. Schamel also stated that he told the government earlier that day that "I would be raising [the motion to withdraw] as soon as it was confirmed with [Defendant]." *Id.* 4:16-19; *see also id.* 7:17-23 (government counsel stating that Schamel informed him of Defendant's intent to withdraw her plea "15 minutes before today's hearing was supposed to begin"). Schamel stated that although he and Defendant had discussed a motion to withdraw guilty plea, "ultimately we filed the supplemental sentencing memorandum believing that [Defendant] had decided not to do that." *Id.* 4:24-25. Schamel said that finances were Defendant's "main reason" for delaying her motion and that Schamel had "talked to her extensively about that today" to allay Defendant's concerns. *Id.* 5:2-10.

Schamel requested an opportunity to brief Defendant's motion to withdraw. Specifically, Schamel asked for "ten days, because of the holiday." *Id.* 5:22-23. Schamel asked the Court not to proceed with sentencing because "if we go forward with the sentencing, I think I'm going to be ineffective because I now have a series of arguments that I cannot make. I have – I'm in a different position than I thought I was when I woke up this morning." *Id.* 14:9-13. The Court did not proceed with sentencing and then set a briefing schedule and hearing date for Defendant's motion to withdraw. Tr. 15:7-19:6; *see* ECF No. 291.

On December 19, 2018, in order "to avoid contributing to any prejudice" caused by

Defendant's nineteen-month delay in seeking to withdraw her May 3, 2017 guilty plea, the Court

amended the deadlines and set an expedited briefing schedule on Defendant's motion to withdraw

guilty plea.  ECF No. 292.  Defendant's motion was due January 4, 2019; the government's

response was due January 23, 2019; and Defendant's reply was due January 30, 2019.  *Id.* at 1.

The Court set a hearing on Defendant's motion to withdraw for February 13, 2019.  *Id.*

On December 27, 2018, Defendant filed an unopposed motion to continue the briefing

deadlines on Defendant's motion to withdraw due to "counsel's travel schedule and the difficulties

of communicating with Ms. Guntipally."  ECF No. 293 at 2.  On December 27, 2018, the Court

denied Defendant's motion.  ECF No. 294.

On January 4, 2019, Defendant filed her motion to withdraw her guilty plea.  ECF No. 296

("Mot.").  In a footnote, Defendant acknowledged her failure to file a declaration

contemporaneously with the motion, but provided no date certain by when Defendant would file

her declaration.  ECF No. 296 at 10 n.2.  Defendant asserted that because she had "prepared this

motion in an abbreviated timeframe and experienced extraordinary difficulty contacting counsel,"

Defendant had been unable to "verify the details of a declaration."  *Id.*  Defendant cited the

difficulty of scheduling "unmonitored telephone calls" and stated that Defendant and counsel had

not spoken between the December 18, 2018 hearing and the January 4, 2019 motion.[1]  *Id.*

On January 7, 2019, Venkat, filed a pro se motion to vacate his sentence under 28 U.S.C. §

2255.  ECF No. 297.  Venkat, who is not yet in custody, signed his motion on January 4, 2019, the

date of Defendant's motion to withdraw her guilty plea.  *Id.* at 12.  In the motion, Venkat asserts

that his former counsel, Leeming, pressured Venkat to plead guilty.  *Id.* at 4.

On January 11, 2019, the government filed a motion requesting (1) a waiver of

Defendant's attorney-client privilege; (2) an order setting a date certain for Defendant to file a

---

[1] The Court notes that Defendant's retained counsel, S.H. Mike Kim, works in Sunnyvale, California.  ECF No. 231.  Defendant is incarcerated at FCI-Dublin, which is only a 32-mile drive from Kim's office in Sunnyvale.  Defendant and her counsel offer no explanation for why, if Defendant had trouble scheduling unmonitored telephone calls, Kim did not drive the 32 miles to FCI-Dublin to meet with Defendant in person.

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

declaration in support of her motion to withdraw guilty plea; and (3) a modification of the briefing and hearing schedule. ECF No. 301. On January 16, 2019, the Court granted the government's motion. ECF No. 304. Pursuant to that order, Defendant's declaration was due January 18, 2019; the government's response to Defendant's motion to withdraw guilty plea was due February 6, 2019; Defendant's reply was due February 13, 2019; and the hearing on Defendant's motion was set for February 27, 2019. *Id.* at 2.

On January 18, 2019, Defendant filed a declaration in support of her motion to withdraw guilty plea. ECF No. 307.

On February 6, 2019, the government filed a motion for leave to file an oversize opposition. ECF No. 312. The government also filed its opposition. ECF No. 313 ("Opp.").

Then, on February 7, 2019, Defendant filed an unopposed motion to file an oversize reply and to extend the deadline for Defendant to file her reply. ECF No. 319. Defendant specifically requested that Defendant's reply be due February 20, 2019. *Id.* at 2.

On February 7, 2019, the Court (1) granted the government's motion for leave to file an oversize opposition; (2) granted Defendant's request for an extension to file her reply brief by February 20, 2019; and (3) permitted Defendant to file an oversize reply. ECF No. 320.

On February 12, 2019, the Court continued the hearing on Defendant's motion to March 6, 2019 due to the availability of the Telugu interpreter. ECF No. 323.

On February 13, 2019, Defendant filed a request to extend the deadline to file her reply brief to February 27, 2019—even though only a week earlier, the Court had granted Defendant's request to extend the deadline to February 20, 2019. ECF No. 324. Defendant also requested a later start time for the March 6, 2019 hearing. *Id.* The Court granted Defendant's request to delay the hearing time, but denied Defendant's request for a further extension of the deadline to file a reply. ECF No. 325.

Then, on February 20, 2019, the date her reply brief was due, Defendant filed another request for an extension of the deadline to file her reply. ECF No. 327. On February 20, 2019, the Court denied Defendant's request. ECF No. 328. On February 20, 2019, Defendant filed her

19

1 | reply.  ECF No. 329 ("Reply").

**II.     LEGAL STANDARD**

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw her guilty plea prior to sentencing if the defendant demonstrates a "fair and just reason for withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  The fair and just standard "is generous and must be applied liberally," but a defendant may not withdraw her plea "simply on a lark." *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009) (citations and internal quotation marks omitted). "Fair and just reasons for withdrawal include 'inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.'" *United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015) (citation omitted).  Where the Ninth Circuit has "vacated the previously imposed sentence and remanded for resentencing," the fair and just reason standard applies to a defendant's pre-resentencing motion to withdraw her guilty plea. *United States v. Waknine*, 409 F. App'x 72, 73 (9th Cir. 2010).  The defendant bears the burden to show a fair and just reason to withdraw her guilty plea. *United States v. Garcia-Lopez*, 903 F.3d 887, 891 (9th Cir. 2018).

**III.    DISCUSSION**

In her motion, Defendant argues that two bases support granting Defendant's motion to withdraw: (1) Defendant's codefendant, Sandhya Ramireddi, filed a motion to vacate under 28 U.S.C. § 2255 in December 2017; and (2) Defendant received inadequate legal advice from Paul Meltzer, her former counsel.  Because the Court concludes that Defendant has not shown any "fair and just reason" for Defendant to withdraw her guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B), the Court DENIES Defendant's motion.

**A.  Ramireddi's § 2255 Motion**

Defendant contends that "newly discovered evidence" has diminished the strength of the government's case. Mot. at 10.  The alleged new evidence Defendant relies upon is Ramireddi's pro se § 2255 motion, which Ramireddi filed on December 27, 2017, two days before her self-surrender date.  Before filing the § 2255 motion, Ramireddi had filed three prior requests to

20

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

continue her self-surrender date. ECF Nos. 200, 209, 219. Although Ramireddi claimed in her §

2255 motion that she was innocent, Ramireddi attached to the motion an email that Ramireddi's

counsel, Assistant Federal Public Defender Varell Fuller, sent to Ramireddi after sentencing:

> Dear Sandhya,
>
> I am sorry you are having a difficult time coming to terms with the sentencing outcome. It is not what I had hoped for. However, as we discussed, your advisory guideline range always involved the possibility of a custodial term. I advised you that I would ask for a halfway house and or home confinement, and I did just that at sentencing. The court however disagreed and believed a custodial term was warranted. As to the weight of the evidence against you, it was considerable. You were charged with, among other things, conspiracy to commit visa fraud and obstruction of justice. As I also advised, if you proceeded to trial, it was my assessment that you would most certainly have been convicted of the more serious charges, which were aggravated felonies. I understand your position was that you were simply doing what you were told. That however is not a defense. There is no research I conducted that I can provide you with, other than the discovery and evidence against you, and my assessment of the weight of the evidence against you. If you recall, I previously provided you with all the witness interviews of those individuals who would likely have testified against you. However, please call to discuss specifically what you need and I will have my office provide you with that information.

ECF No. 225 at 12. After the Court denied Ramireddi's motion on December 29, 2017

and Ramireddi reported to prison, Ramireddi did not appeal. ECF No. 223.

The Ninth Circuit has held that newly discovered evidence may constitute a fair and just

reason for a defendant to withdraw her guilty plea. *United States v. Garcia*, 401 F.3d 1008, 1009

(9th Cir. 2005). As an initial matter, the district court must consider whether the evidence cited by

the defendant is newly discovered. *See United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir.

2009) (crediting district court's finding that at the time of his plea, the defendant was aware of the

declarations he cited in support of his motion to withdraw, such that the evidence was not new).

For example, the Ninth Circuit has identified as new evidence a witness who "was unknown to the

defense at the time of plea" and later came forward with a declaration that distanced the defendant

from the scene of the alleged crime. *Garcia*, 401 F.3d at 1011 & n.2.

If a defendant identifies such newly discovered evidence, "the generous 'fair and just

21

1   reason' standard does not require that the defendant show that the new evidence exonerates him or

2   that there is a reasonable probability he would not have been convicted had the case gone to trial."

3   *Id.* at 1011. Rather, newly discovered evidence warrants withdrawal if the evidence "could have

4   at least plausibly motivated a reasonable person in [the defendant's] position not to have pled

5   guilty had [she] known about the evidence prior to pleading." *Id.* at 1011–12. However, a

6   defendant's mere "belief that the government had a weaker case than [she] originally thought does

7   not constitute a fair and just reason to withdraw his guilty plea." *Showalter*, 569 F.3d at 1156.

8        Defendant contends that Ramireddi's § 2255 motion is a "recantation" that undermines the

9   government's case against Defendant. Defendant relies principally on *Garcia*, 401 F.3d 1008, and

10  *United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) (en banc). Neither case assists Defendant.

11       In *Ruiz*, the en banc Ninth Circuit explained that a district court must apply the "fair and

12  just reason" standard to a pre-sentence motion to withdraw a guilty plea. *Id.* at 1032. The Ninth

13  Circuit observed that the new evidence underlying the *Ruiz* defendant's motion—a codefendant's

14  declaration that the *Ruiz* defendant had not been involved in the criminal activity—"*may* have

15  provided [defendant] with a fair and just reason to withdraw his plea." *Id.* at 1032–33 (emphasis

16  added). *Ruiz* does not stand for the proposition that a "codefendant's recantation" of the

17  codefendant's involvement in the criminal activity is a fair and just reason for Defendant to

18  withdraw a guilty plea. The *Ruiz* codefendant did not recant; rather, the *Ruiz* codefendant attested

19  in a sworn declaration that the *moving defendant* had not committed any crime. *Id.* at 1031.

20       In this case, by contrast, Ramireddi only asserted her own innocence in a single motion,

21  which the Court denied and Ramireddi did not appeal. Ramireddi's § 2255 motion did not state

22  that Defendant was innocent—nor even mention Defendant. *See* ECF No. 225. Defendant has not

23  produced any declaration from Ramireddi that Defendant is innocent, unlike in *Ruiz*. Defendant

24  cites the Court's statement at Defendant's sentencing that Ramireddi "engaged in the crime on the

25  orders of [Defendant] and [Ramireddi's] brother" to argue that Ramireddi's isolated motion

26  "necessarily undermines" the government's case against Defendant. Reply at 3–4. However, the

27  Court addressed Ramireddi's conduct at Defendant's sentencing only to demonstrate why

28   

22

Defendant deserved a longer sentence than her codefendants. *See* 11/29/17 Tr. 33:8-35:18 (explaining how Ramireddi's conduct was "dramatically different" than Defendant's). The Court never stated, nor implied, that Defendant's guilt hinges on Ramireddi's conduct. Moreover, Defendant admitted to signing "more than 100 phony H-1B visa applications," whereas Ramireddi admitted to signing documents in support of only 21 phony applications. *Id.* 22:6-11 (offer of proof in Defendant's case); 9/27/17 Tr. 4:1-5 (Ramireddi admission that she signed documents for 21 phony applications). Thus, even if Ramireddi *were* innocent, Defendant fails to account for the at least 79 remaining applications Defendant admitted to signing.

*Garcia* also demonstrates that Ramireddi's motion does not provide a fair and just reason for Defendant to withdraw her guilty plea. When the *Garcia* defendant initially pled guilty, the defendant explained "that he did not concede his guilt, but rather was entering into the agreement only for the purpose of limiting his sentencing exposure." 401 F.3d at 1010. At the plea colloquy, Garcia affirmed that he agreed with the government's statement of the facts only "[f]or the purposes of this plea." *Id.* Before sentencing, the defendant moved to withdraw his guilty plea based on a declaration from a newly discovered witness that "directly contradict[ed]" another witness's testimony and distanced defendant from the crime scene. *Id.* at 1010–11. Thus, the Ninth Circuit held, the new evidence "raise[d] new questions about [Defendant's] involvement in the illegal activity." *Id.* at 1011. Here, by contrast, Ramireddi's own isolated assertion of innocence made after Ramireddi's repeated attempts to delay her self-surrender date has no bearing on Defendant's own "involvement in the illegal activity" alleged in this case. *See* Plea Agreement at 3 (admitting that Defendant "directed and controlled the activities of the employees" of the staffing companies involved in the visa fraud scheme).

The Court's conclusion applies equally to Defendant's attempted reliance, in her reply brief, on Venkat's own § 2255 motion to vacate his sentence. Defendant offers no explanation for how Venkat's assertion of innocence relates to Defendant or "raises new questions about [Defendant's] involvement in the illegal activity." *Garcia*, 401 F.3d at 1011.

More important, the timing of Venkat's § 2255 motion strongly suggests that the § 2255

23

motion is an attempt to create new evidence to support Defendant's motion to withdraw guilty plea. Although Venkat filed the § 2255 motion on January 7, 2019, Venkat signed his § 2255 motion on January 4, 2019—the same date that Defendant filed her motion to withdraw guilty plea. ECF No. 297 at 12. Defendant admitted in her plea agreement that she and Venkat tampered with evidence and witnesses once they learned about the government's investigation. Plea Agreement at 4–5. In a post-plea proffer, the government even suggested that Defendant had attempted to bribe the two codefendants after Defendant pled guilty. Meltzer Decl. ¶ 17; Lerman Decl., Ex. 4. Defendant herself admits that Defendant and Venkat, her husband, were in regular contact leading to Defendant's and Venkat's near-simultaneous motions. Reply at 5–6. For example, Defendant and Venkat exchanged almost 200 phone calls between September 1, 2018 and January 8, 2019. ECF No. 302-3. Venkat's curiously timed § 2255 motion—filed before he enters custody and over nineteen months after his own guilty plea—appears part of Defendant's pattern of obstruction, and the Court affords it no weight.

## B. Defendant's Delay Demonstrates Her Lack of Credibility

Before discussing Defendant's other alleged fair and just reasons, the Court addresses Defendant's continual delay in bringing her motion to withdraw guilty plea. The Ninth Circuit has "looked to a defendant's delay in moving to withdraw a plea as a barometer of the defendant's candor with the court about [her] reasons for withdrawal." *Garcia*, 401 F.3d at 1013. Thus, a defendant's delay often "suggests that the 'withdrawal was intended to serve a different purpose than that avowed'" by the defendant. *United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003) (quoting *United States v. Navarro-Flores*, 628 F.2d 1178, 1184 (9th Cir. 1980)).

While "[a] swift change of heart is itself strong indication that the plea was entered in haste and confusion . . . if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force." Fed. R. Crim. P. 32, advisory committee's note (1983) (citations omitted). A defendant's guilty plea is not a placeholder "for acceptance of responsibility unless or until a preferable alternative later arises." *Enmsinger*, 567 F.3d at 593; *see also United States v.*

*Hyde*, 520 U.S. 670, 677 (1997) (stating that a guilty plea is "a grave and solemn act, which is accepted only with care and discernment") (citations and internal quotation marks omitted).

Here, Defendant repeatedly admitted her guilt and filed her motion to withdraw her guilty plea more than nineteen months after her May 3, 2017 guilty plea. Defendant's manifest delay demonstrates that her alleged "fair and just" reasons for withdrawal lack credibility. The Court sets forth the history of Defendant's delay in detail below.

**1. Defendant's History of Delay**

On May 3, 2017, Defendant pled guilty and signed a cooperation plea agreement. ECF Nos. 163, 165. Over nineteen months later, on December 18, 2018—the day of Defendant's resentencing—Defendant first stated that she would move to withdraw her guilty plea. 12/18/18 Tr. 4:12-15. Throughout the intervening nineteen months, Defendant repeatedly admitted guilt and never stated that she would move to withdraw her guilty plea.

In her plea agreement, Defendant stated, "I am guilty of the offense to which I am pleading guilty." Plea Agreement at 2. Specifically, Defendant admitted that she "ran the operations of [DS Soft Tech and Equinett] on a daily basis, and I directed and controlled the activities of the employees in all their tasks." *Id.* at 3. Defendant admitted that while operating DS Soft Tech and Equinett, she submitted "more than 100 phony H-1B visa applications" for nonimmigrant beneficiaries to work at end-client companies that "either did not exist or never received the proposed H-1B workers." *Id.* at 3. Defendant admitted that after she learned about the government's investigation, Defendant created false documents and encouraged others to "mislead the agents, conceal the conspiracy, and otherwise obstruct the government's investigation." *Id.* at 4–5. Defendant agreed to cooperate with the government, and to "respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury, or at any trial or other proceeding." *Id.* at 7–8. Finally, Defendant agreed "not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government." *Id.* at 8.

At the change of plea hearing on May 3, 2017, Defendant was administered the oath and the Court advised Defendant, "You have taken the oath, which is a promise to tell the truth. If you

25

now say anything that is not true, the government can use your untrue statement to prosecute you for perjury or false statement." 5/3/17 Tr. 15:9-12. Then, the Court engaged in a colloquy with Defendant, and Defendant agreed under oath that Defendant, among other things:

> (1) had read the plea agreement with her Telugu interpreter;
> (2) had read the plea agreement in English;
> (3) understood her plea agreement;
> (4) had discussed the plea agreement with Meltzer;
> (5) Meltzer had answered her questions about the plea agreement, possible defenses at trial, and whether she should go to trial;
> (6) was satisfied with her attorney's services;
> (7) was pleading guilty freely and voluntarily;
> (8) understood the elements of the crime;
> (9) understood the maximum penalties;
> (10) understood that she had the right to plead not guilty and stated that she gave up that right; and
> (11) freely gave up her other trial rights.

*Id.* 15:25-22:22. In response to the Court's question, "Do you understand that you have the right to plead not guilty?", Defendant stated, "I'm guilty." *Id.* 19:25-20:2.

Then, the government made an offer of proof. The government stated that it could show that Defendant "submitted, and caused to be submitted, more than 100 phony H-1B visa applications by means of mailings to the Department of Homeland Security, for temporary nonimmigrant beneficiaries sponsored by petitioning companies DS Soft Tech, Equinett, and SISL Networks." *Id.* 24:20-25:3. The government could also prove that Defendant made "false representations to federal law enforcement officers and tamper[ed] with witnesses, victims, and informants." *Id.* 26:14-18. After the government's offer of proof, the Court asked Defendant, under oath, whether Defendant heard the government's offer of proof and whether the facts stated were true and correct. *Id.* 28:18-23. Defendant answered, "True." *Id.* 28:24. When the government asked Defendant her plea, Defendant responded in English, "Guilty." *Id.* 29:20-21.

Defendant also cooperated with the government before and after her guilty plea. For example, at an April 13, 2017 proffer session, the government told Defendant that she should "answer all questions as truthfully and accurately as possible but if she did not know the answer to

something, she should not speculate." Lerman Decl., Ex. 3. Defendant then admitted that she "submitted fake and fraudulent fake documentation in . . . I-129 petitions" for foreign workers, created false documents to attempt to hide her conduct, and coached beneficiaries and others to lie to government investigators. *Id.* On June 29, 2017, after her guilty plea, Defendant attended a second proffer session with the government. Lerman Decl., Ex. 4. At no point did Defendant state that she wished to withdraw her plea.

Defendant also maintained her guilt before her first sentencing. Dayle Carlson, a sentencing consultant, talked with Defendant on multiple occasions beginning in September 2017, and swore under penalty of perjury that Defendant "sometimes rationalized her illegal conduct, but at no time did she deny the allegations to which she pled guilty." Carlson Decl. ¶ 10.

The November 1, 2017 PSR includes Defendant's written statement of responsibility:

> *Do you accept responsibility for committing the offense?* Yes, I accept full responsibility for my actions. Please see my Plea Agreement for details of my actions.

> *How do you feel about having committed this offense?* I am very embarrassed and ashamed of my conduct. I knew better and should not have acted that way. When my offense was discovered, I panicked and tried to cover up my actions, which I regret.

ECF No. 197 ¶ 52. Carlson was present when Defendant "confirmed her acceptance" to U.S. Probation at the PSR interview. *Id.* ¶ 14.

In Defendant's November 15, 2017 sentencing memorandum, Defendant "acknowledge[d] that she was an organizer or leader" of the conspiracy and agreed that her conduct warranted an obstruction of justice enhancement. ECF No. 198 at 6. Defendant also argued for an acceptance of responsibility adjustment based on Defendant's written statement of acceptance in the PSR, Defendant's admission "to a detailed description of her offense conduct" in the plea agreement, and Defendant's acknowledgement of her leadership role in the visa fraud scheme. *Id.* at 7.

Then, Defendant appealed her sentence to the Ninth Circuit on December 14, 2017. ECF No. 213. With her February 5, 2018 self-surrender date approaching, Defendant filed in this Court a January 25, 2018 motion to stay her incarceration pending appeal. ECF No. 236. After this

27

Court denied Defendant's motion, Defendant filed a February 1, 2018 motion for bail pending appeal with the Ninth Circuit, which the Ninth Circuit denied. ECF No. 242. On December 14, 2017, Defendant also fired Meltzer, who Defendant now alleges provided ineffective assistance. ECF No. 211. Although that action freed Defendant from Meltzer's alleged "pressure" to plead guilty, Defendant did not move to withdraw her May 3, 2017 guilty plea until more than a year after she fired Meltzer.

On December 27, 2017, two days before Ramireddi's own self-surrender date, Ramireddi filed her § 2255 motion. ECF No. 225. Although Defendant relies on Ramireddi's December 27, 2017 § 2255 motion as "newly discovered evidence," Defendant did not move to withdraw her guilty plea until a year after Ramireddi's § 2255 motion.

Before the Ninth Circuit, Defendant repeatedly suggested that she *might* file a motion to withdraw her guilty plea, but Defendant never asserted her innocence. Defendant made the following representations to the Ninth Circuit:

- On February 1, 2018, in her motion for bail pending appeal, Defendant asserted that she "could move to vacate her guilty plea prior to resentencing." Ninth Circuit Appeal 17-10533, Dkt No. 9-1 at 13.

- On March 15, 2018, in her motion to expedite her appeal, Defendant wrote that she "could seek to withdraw her guilty plea." *Id.*, Dkt. No. 18 at 3.

- On March 15, 2018, in her opening brief on appeal, Defendant wrote that her "guilty plea is invalid due to ineffective assistance of counsel," but did not state that she intended to withdraw her guilty plea or that she was innocent. *Id.*, Dkt. No. 19 at 12 n.3.

- On March 23, 2018, in her reply in support of her motion to expedite, Defendant again wrote, "[I]f this Court remanded for sentencing, [Defendant] could seek to withdraw her guilty plea." *Id.*, Dkt. No. 23 at 6.

Although Defendant could have dismissed her appeal to pursue a collateral attack on her guilty plea, Defendant never did so.

Then, even after the Ninth Circuit issued its ruling on Defendant's appeal on August 22, 2018, Defendant did not move to withdraw her guilty plea, despite her repeated suggestions before

28

the Ninth Circuit that she "could" do so. Rather, on October 16, 2018, Defendant expressed interest in continuing to cooperate with the government. Defendant's counsel wrote in an email to the government that Defendant "is interested in working with the Government, and we would like to run a few things by you." Lerman Decl., Ex. 6.

On December 11, 2018, Defendant filed a supplemental sentencing memorandum in which Defendant again admitted her guilt: "Ms. Guntipally committed serious criminal activity for which she has accepted responsibility." ECF No. 287 at 9. Defendant doubled down on her admission of guilt when represented by current counsel, even though Defendant had been free of Meltzer's "pressure" for a year.

The record thus flatly contradicts Defendant's contention in her motion that "[o[ther than at her change of plea hearing, [Defendant] has never admitted guilt." Mot. at 13. To the contrary, Defendant admitted her guilt in the plea agreement, at the change of plea hearing, at two proffer sessions, to Carlson, in her written statement to the U.S. Probation Officer, in her PSR interview with the U.S. Probation Officer, in her first sentencing memorandum, and, most recently, in her supplemental sentencing memorandum.

Only at the last possible moment—her December 18, 2018 resentencing—did Defendant state that she wished to withdraw her guilty plea. ECF No. 291. Defendant did so after she had the benefit of her own supplemental sentencing memorandum and the government's supplemental sentencing memorandum, which repeat many of the same arguments as the initial sentencing memoranda. Thus, more than nineteen months after Defendant's May 3, 2017 guilty plea, and only after Defendant was aware she might again face a 52-month sentence, Defendant finally moved to withdraw her guilty plea.

The Ninth Circuit addressed a similar delay in *Nostratis*, 321 F.3d 1206, although Defendant's conduct in the instant case is much more extreme. In *Nostratis*, the defendant moved to withdraw his guilty plea on his sentencing date, over two years after his initial guilty plea. *Id.* at 1207–08. The district court concluded that the defendant's delay "combined with his knowledge of his likely sentence due to the presentence report" rendered the defendant not

credible. *Id.* On appeal, the Ninth Circuit held that the defendant's "knowledge of his likely sentence, taken together with the unexplained two-year delay between his plea and his plea withdrawal motion" all showed that the defendant's stated reasons for withdrawal were not bona fide. *Id.* at 1211–12; *see also Yamashiro*, 788 F.3d at 1237 (affirming the denial of a motion to withdraw guilty plea where the defendant first contested the plea "on the eve of sentencing"); *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995) (upholding denial of motion to withdraw guilty plea filed only once the defendant knew he would "receive a heavier sentence than expected").

Defendant was even more aware of her sentencing exposure than the defendants in *Nostratis*, *Yamashiro*, and *Alber*, given that the Court previously sentenced Defendant to 52 months of incarceration. The parties' supplemental sentencing memoranda submitted for the resentencing reiterated many of the same arguments as at the first sentencing, and the PSR's Guidelines range remained unchanged on remand. ECF Nos. 287, 288. Defendant proceeded with resentencing until the very last moment, as the government learned only "15 minutes before" the resentencing hearing that Defendant intended to move to withdraw her plea. 12/18/18 Tr. 7:17-23. Only a week earlier, Defendant filed a supplemental sentencing memorandum that stated Defendant "committed serious criminal activity for which she has accepted responsibility." ECF No. 287 at 9. Defendant cites no case where a court has granted a motion to withdraw first raised at sentencing—let alone resentencing—and after the defendant's repeated admissions of guilt. Therefore, Defendant's continuous pattern of delay demonstrates that Defendant's alleged "fair and just" reasons lack credibility.

### 2. Defendant Offers No Justification for Her Delay

Defendant's attempted justification for her delay—that her "only reservations" about a motion to withdraw were financial—rings hollow.

Defendant contends that once Defendant raised her financial concerns and Defendant's current counsel resolved them (at resentencing), Defendant promptly moved to withdraw. Reply at 18 n.12. However, Defendant's explanation is inconsistent with Defendant's and her counsel's

30

other statements to the Court. For example, Defendant's counsel stated on December 18, 2018 that Defendant and counsel had discussed for "weeks," both over the telephone and in person, whether to file a motion to withdraw guilty plea. 12/18/18 Tr. 4:20-23. Almost a full year earlier, on February 1, 2018—and while represented by current counsel—Defendant told the Ninth Circuit in her motion for bail pending appeal that Defendant "could move to vacate her guilty plea prior to resentencing." Ninth Circuit Appeal 17-10533, Dkt. 9 at 13. Therefore, if Defendant's "only reservations" about filing a motion to withdraw guilty plea were financial, it defies logic that in the *eleven months* Defendant and her current counsel were discussing whether to file such a motion, Defendant's financial concerns *never* arose.

Moreover, Defendant's financial excuse is not credible given Defendant's extensive assets and the millions in profits Defendant earned from the conduct that Defendant repeatedly admitted. Defendant and Venkat earned approximately $15 million in gross profits and $3.3 million in net profits from the visa fraud scheme between 2010 and 2014. ECF No. 204 ¶ 17 (Defendant's PSR). In November 2017, Defendant reported total assets of more than $1.3 million, including more than $300,000 in cash spread across multiple bank accounts and more than $37,000 worth of jewelry. *Id.* ¶ 88. Less than a year ago, in June 2018, Defendant's husband Venkat reported more than $2.2 million in total assets. *See* ECF No. 271 ¶ 90 (Venkat's PSR). Thus, even after accounting for Venkat's $500,000 forfeiture, Venkat and Defendant have significant assets.

Nor have Defendant's income streams dried up since Defendant's indictment and guilty plea. Even at the time of Defendant's sentencing, Defendant continued to earn approximately $3,000 per month in residual payments from the fraudulent visa scheme. 11/29/17 Tr. 24:8-11; ECF No. 204 ¶ 86. Defendant and Venkat continue to own a rental property that generates thousands of dollars in monthly income. *Id.*; ECF No. 271 ¶ 90. Moreover, at Venkat's sentencing in June 2018, Venkat was working full-time and earning $12,000 per month. ECF No. 271 ¶ 90. Because the Court delayed Venkat's self-surrender date a full year to June 14, 2019, Venkat is presumably still working and earning $12,000 per month.

Thus, based on the Guntipallys' demonstrable wealth, the extent of the scheme's profits,

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

and Defendant's failure to ever raise financial concerns until December 18, 2018, the Court finds not credible the claim that Defendant was so concerned about the financial implications of a single motion to withdraw her guilty plea that she waited nineteen months to file such a motion.

Defendant further contends that because Defendant "repeatedly apprised the Court that this day would come," the Court should conclude that Defendant has not delayed. Mot. at 15. Defendant relies entirely on her filings to the Ninth Circuit between February and March 2018. However, Defendant's Ninth Circuit filings only highlight Defendant's dilatoriness. Defendant made the following representations to the Ninth Circuit:

- On February 1, 2018, in her motion for bail pending appeal, Defendant asserted that she "could move to vacate her guilty plea prior to resentencing." Ninth Circuit Appeal 17-10533, Dkt No. 9-1 at 13.

- On March 15, 2018, in her motion to expedite her appeal, Defendant wrote that she "could seek to withdraw her guilty plea." *Id.*, Dkt. No. 18 at 3.

- On March 15, 2018, in her opening brief on appeal, Defendant wrote that her "guilty plea is invalid due to ineffective assistance of counsel," but did not state that she intended to withdraw her guilty plea or that she was innocent. *Id.*, Dkt. No. 19 at 12 n.3.

- On March 23, 2018, in her reply in support of her motion to expedite, Defendant again wrote, "[I]f this Court remanded for sentencing, [Defendant] could seek to withdraw her guilty plea." *Id.*, Dkt. No. 23 at 6.

Thus, Defendant's filings demonstrate that she and current counsel were well aware that Defendant could file a motion to withdraw. In light of Defendant's failure to file such a motion in the nineteen months after her May 3, 2017 guilty plea despite her repeated suggestions that she could do so, and Defendant's filing of a sentencing brief on December 11, 2018 in which she again admitted that she "committed serious criminal activity for which she has accepted responsibility," Defendant's December 18, 2018 claim of innocence only a week later lacks credibility. The Court notes that on December 11, 2018, Defendant had been represented by her current counsel for nearly a year and Defendant had fired Meltzer a year earlier on December 14, 2017, so Defendant's admission of guilt in the December 11, 2018 sentencing brief could not be

the result of Meltzer's "pressure."

Defendant's actions on remand also contradict the notion that her Ninth Circuit filings put the government and Court on notice of Defendant's intent to withdraw her guilty plea. Defendant attempted to discuss cooperating with the government on October 16, 2018, after the Ninth Circuit's August 22, 2018 ruling. Lerman Decl., Ex. 6. As recently as December 11, 2018, Defendant filed a supplemental sentencing memorandum that stated, "[Defendant] committed serious criminal activity for which she has accepted responsibility." ECF No. 287 at 9. Thus, Defendant's belated decision to attempt to withdraw her guilty plea surprised her own counsel, who stated at the December 18, 2018 resentencing, "[I]f we go forward with the sentencing, I think I'm going to be ineffective because I now have a series of arguments that I cannot make. I have – I'm in a different position than I thought I was when I woke up this morning." 12/18/18 Tr. 14:9-13.

In sum, to credit Defendant's argument would be to treat a guilty plea as a mere "placeholder that reserves [a defendant's] right to our criminal system's incentives for acceptance of responsibility unless or until a preferable alternative later arises," contrary to the instructions of the United States Supreme Court and the Ninth Circuit. *Ensminger*, 567 F.3d at 593; *see also Hyde*, 520 U.S. at 677 ("[A] guilty plea is no such trifle, but a grave and solemn act, which is accepted only with care and discernment.") (citation and internal quotation marks omitted). A defendant "cannot plead guilty to test the weight of potential punishment and then withdraw [her] plea if the sentence is unexpectedly severe." *Nostratis*, 321 F.3d at 1211 (citation and internal quotation marks omitted).

Defendant's actions are redolent with such gamesmanship. Therefore, the Court finds that Defendant's motion to withdraw her guilty plea "is intended to serve a different purpose than that avowed" by Defendant, and that her stated reasons for withdrawal are not bona fide. *Nostratis*, 321 F.3d at 1211 (quoting *Navarro-Flores*, 628 F.2d at 1184). Although Defendant's motion lacks credibility, the Court proceeds to discuss why Defendant's other alleged fair and just reasons are without merit.

33

### C. Erroneous Legal Advice

Defendant contends that Meltzer's inadequate legal advice provides a fair and just reason to withdraw her guilty plea. Mot. at 12. This is so even though Defendant conceded to the Ninth Circuit on March 15, 2018 that the case record does not "reveal[] obviously ineffective representation" with respect to Defendant's guilty plea. Ninth Circuit Appeal No. 17-10533, Dkt. No. 19 at 12 n.3. On May 3, 2017, at her change of plea hearing, Defendant also swore under penalty of perjury that she was satisfied with Meltzer's services. 5/3/17 Tr. 16:23-17:4. In Defendant's plea agreement, which she signed and affirmed on May 2, 2017, Defendant also stated, "I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested." Plea Agreement at 10.

"Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made presentence." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). Defendant's burden is to show that "proper advice" could "plausibly have motivated a reasonable person in [her] position not to have pled guilty." *Id.* at 1168. For example, defense counsel may render "deficient performance by advising defendant that [the defendant's] likely sentence was probation to eight years," when "there was virtually no chance" that the defendant would receive probation. *United States v. Davis*, 428 F.3d 802, 805–06 (9th Cir. 2005). The Ninth Circuit has also held that defense counsel's failure to adequately advise the defendant about the basis (or lack thereof) for a suppression motion is a fair and just reason to withdraw guilty plea. *McTiernan*, 546 F.3d at 1168.

None of Meltzer's four alleged inadequacies justifies Defendant's motion to withdraw.

### 1. Review of Government Discovery

First, Defendant contends that Meltzer failed to review the government's discovery material with her. Defendant declares that Meltzer "never reviewed the government's discovery material with me and, to my knowledge, did not in fact review the Government's discovery material." Guntipally Decl. ¶ 5. Defendant's contention is contradicted by the record, including

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

her own statements.

In Defendant's October 23, 2017 email to Meltzer regarding objections to the PSR, Defendant herself referred to government discovery that Meltzer had shared with her: "I've not seen any document (in discovery, PR proffer statements) about PR statement saying that Guntipallys forged his signature." Meltzer Decl., Ex. 6.

Earlier, on May 2, 2015, Meltzer and Leeming arranged a meeting with Defendant and Venkat to review "a long and detailed" PowerPoint presentation that the government had created to summarize the case evidence. Meltzer Decl., Ex. 2.

Similarly, on June 30, 2015, Meltzer emailed Defendant the transcripts of eight different interviews with witnesses. Meltzer Decl., Ex. 2. Among the discovery Meltzer shared with Defendant were "transcripts of recorded conversations during which [Defendant] counseled witnesses to lie to government investigators." Leeming Decl. ¶ 6; *see also* Meltzer Decl. ¶ 11 (explaining that Meltzer and Leeming created a Dropbox account, accessible to both Defendant and Venkat, to review the "most significant" documents the government produced in discovery).

Thus, the record conclusively contradicts Defendant's allegation that Meltzer failed to review or share discovery material.

### 2. Guilty Plea and Sentence Negotiations

Second, Defendant contends that Meltzer promised to negotiate a *de minimis* sentence, but failed to do so. Defendant relies only on her self-serving declaration that Meltzer "promised me that he would negotiate in an attempt to obtain a lower sentence for me; however, Mr. Meltzer never discussed doing so with me and, to my knowledge, did not do so." Guntipally Decl. ¶ 6. As an initial matter, "fear of receiving a harsh sentence, standing alone" does not constitute a fair and just reason to withdraw guilty plea "even if counsel's initial advice as to length of plea turned out to be inaccurate." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989).

Regardless, the record contradicts Defendant's allegations that Meltzer promised Defendant a *de minimis* sentence, failed to mitigate Defendant's sentence, and failed to keep Defendant apprised Defendant of Meltzer's negotiations. Before indictment, after indictment, and

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

after Defendant's plea, Meltzer repeatedly attempted to negotiate a lower sentence for Defendant and informed Defendant of his efforts:

- On September 21, 2015, before Defendant's indictment, Meltzer informed Defendant and Venkat in an email that Meltzer "really would like to see a resolution that avoids deportation and imprisonment and I will try my best to get as close to that goal as I can." Meltzer Decl., Ex. 6.

- On October 16, 2015, Meltzer argued in an email to the government that Defendant's case was analogous to another in which the defendant pled to a charge of use of false documents and received a range of 3-24 months in custody. Meltzer Decl., Ex. 6.

- On March 30, 2017, Meltzer reminded Defendant and Venkat in an email that Meltzer had "been through 4 US Attorneys and none of them have shown any interest in working out an immigration friendly plea." Further, Meltzer reminded Defendant and Venkat that before indictment Meltzer offered for Defendant to plead to the conspiracy charge, but "the offer was rejected by the chief of the Criminal Division after we received a draft plea agreement." Meltzer Decl., Ex. 3.

- On April 25, 2017, Meltzer sent an email to Defendant to confirm recent plea negotiations: "To summarize, over the weekend and on Monday we continued to negotiate over the terms of the plea agreement and we were able to remove the forfeiture provision for 500,000 from your agreement." Meltzer Decl., Ex. 6. Meltzer explained that negotiations had been successful: "We also modified paragraph 7 to allow for all of the arguments over the Guidelines that we need to make." *Id.*

After Defendant's plea, Meltzer hired Dayle Carlson as a sentencing consultant "to investigate and prepare mitigation" for Defendant's sentencing and asked Carlson to attend Defendant's interview with the United States Probation Officer. Carlson Decl. ¶ 12; Meltzer Decl. ¶ 24. In addition, Meltzer sought Defendant's and Carlson's input on the draft PSR and made corrections, Meltzer Decl., Ex. 6, and drafted a sentencing memorandum that requested a significant downward variance. ECF No. 198. The Court lauded Meltzer's "good arguments" for mitigation and in light of those considerations, imposed a 52-month sentence rather than the high end of the Guidelines range. 11/29/17 Tr. 33:4-7; 42:18-24. On this record, Defendant cannot plausibly argue that Meltzer failed to attempt to mitigate her sentence. Defendant's argument that Meltzer was ineffective is even more remarkable because Defendant's current counsel filed a

36

supplemental sentencing memorandum that "fully incorporates the facts and arguments presented in her initial sentencing memorandum and the exhibits thereto"—which was the product of Meltzer's allegedly ineffective representation. ECF No. 287 at 1.

Defendant also cannot cite any promise to obtain a *de minimis* sentence that Meltzer made at any point during Meltzer's three years representing Defendant. The record is to the contrary:

- On September 21, 2015, before indictment, Meltzer told Defendant and Venkat in an email why it would be "difficult" to craft a resolution whereby Defendant received only one year of prison time, given "the allegations of witness tampering and obstruction." Meltzer did not promise a specific result: "I really would like to see a resolution that avoids deportation and imprisonment and I will try my best to get as close to that goal as I can." Meltzer Decl., Ex. 6.

- On March 30, 2017, after indictment, Meltzer wrote in an email to Defendant and Venkat, "We have been through 4 US Attorneys and none of them have shown any interest in working out an immigration friendly plea. After consultation with your immigration counsel I proposed several alternatives. The US Attorney rejected them all." Meltzer Decl., Ex. 3. Meltzer continued, "The US Attorney sees you as the most culpable person in the conspiracy. You therefore face the most serious sentence and possible enhancements for your role in the offense, obstruction of justice, possible abuse of a position of trust and or use of a special skill." *Id.*

- On April 5, 2017, Meltzer wrote to Defendant, "You would like to agree to deportation in lieu of jail. I understand that you are aware of other cases where that has happened and I will review that information when it is received. I am not aware of other cases in this district where that has occurred in an indicted case like this." Meltzer Decl., Ex. 3.

- On November 1, 2017, prior to sentencing, Meltzer wrote in an email to Defendant: "Unfortunately your co defendants have both received prison sentences and I expect that the Court will also sentence you to a term of incarceration." Meltzer Decl., Ex. 7.

Thus, Meltzer repeatedly warned Defendant that she could face significant prison time, and never promised a *de minimis* sentence.

In addition, Defendant's complaint that Meltzer "should have reevaluated the sitation [sic] once it became clear that the Government was unwilling to enter a plea that would avoid deportation" and instead gone to trial, Reply at 14, is belied by Defendant's own request that Meltzer negotiate a plea that provided for deportation in lieu of jail. In April 2017, Meltzer

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

reminded Defendant in an email that Defendant had told Meltzer she "would like to agree to deportation in lieu of jail" because she was "aware of other cases where that has happened." Meltzer Decl., Ex. 6. In September 2015, Defendant had emailed Meltzer and Venkat a link to an article where such a case was discussed, and wrote, "Please see one of the similar cases, how it could get resolved." *Id.*

Relatedly, Defendant attests in her declaration that Meltzer "pressured [Defendant] to plead guilty, emphasizing that nothing existed to prove my innocence." Guntipally Decl. ¶ 4. Defendant claims that "[r]ecently, in the absence of this pressure, [Defendant] has steadfastly maintained her innocence." Reply at 1. However, Defendant fired Meltzer more than a year ago, on December 14, 2017, ECF No. 211, but only moved to withdraw her guilty plea on December 18, 2018. As discussed above, Defendant had admitted only a week earlier in her December 11, 2018 supplemental sentencing brief—when represented by current counsel, not Meltzer—that Defendant had "committed serious criminal activity for which she has accepted responsibility." ECF No. 287. Presumably Defendant's December 11, 2018 admission of guilt was not the product of "pressure" from current counsel, who had been representing Defendant since January 25, 2018.

Regardless, the record contradicts Defendant's claim that Meltzer pressured Defendant. Defendant cites as evidence of Meltzer's "pressure" an April 2017 email in which Meltzer writes, "I truly wish there were better alternatives. Unfortunately trial is not a good option for you given the evidence. I do not recommend that you go to trial." Meltzer Decl., Ex. 3. Defendant offers no support for the remarkable contention that an attorney's mere recommendation against trial constitutes "pressure" or that Meltzer's words left Defendant "without a choice but to plead guilty." *Cf.* Reply at 15. Rather, the record demonstrates that Meltzer "told [Defendant] that she could go to trial," but that the evidence against Defendant was strong and any defense "was made all the more difficult because of [Defendant's] obstruction." Meltzer Decl. ¶ 9; *see also* Leeming Decl. ¶ 4 (explaining that although Defendant initially claimed that she was innocent, Defendant and Venkat "agreed that it was in their interest to negotiate a pre-indictment resolution of the

38

case"). Indeed, the documents that Defendant attached to her reply contradict Defendant, as Meltzer stated in a November 2017 email, "You also made it clear that you didn't want to go to trial and I think that decision was right." ECF No. 329-7.

Defendant also protests the Court's decision to order Defendant to self-surrender two months after resentencing rather than delay the self-surrender date for Defendant "to make arrangements for child care." Mot. at 4. Defendant suggests that Meltzer should have requested consecutive sentences for Defendant and Venkat. *Id.* One might think from Defendant's argument that Defendant has young children in need of child care. However, Defendant omits her children's ages: at the time of Defendant's sentencing, Defendant's daughter was 19 and in college, while Defendant's son was 16. ECF No. 204 ¶ 75. Defendant's motion also fails to mention that the Court has expressly accommodated Defendant's family concerns. The Court delayed Venkat's self-surrender date a full year to June 14, 2019 to enable Venkat to remain at home with the couple's son through his graduation from high school. 6/3/18 Tr. 20:11-19. By June 14, 2019, Defendant's daughter will be 21 years old and have finished her junior year in college, while Defendant's son will be 18 years old and a legal adult like his sister. ECF No. 204 ¶ 80.

### 3. Advice of Counsel Defense

Third, Defendant contends that Meltzer failed to pursue an advice of counsel defense. Nothing in the record indicates that Defendant ever asked Meltzer to pursue such a defense, or that Defendant said she relied on outside counsel when creating any fraudulent documents. Leeming Decl. ¶ 8; Meltzer Decl. ¶ 27. Meltzer also attested in a sworn declaration that Defendant never told Meltzer "any facts that gave rise to an advice of counsel defense." Meltzer Decl. ¶ 27.

Defendant also suggests that she "relied on the advice of . . . Sandhya Ramireddi in completing and signing the immigration documents" at issue in the case. Guntipally Decl. ¶ 7. Defendant's argument is striking, given that Ramireddi speaks little English, did "just clerical and administrative" work at Defendant's companies, and earned as little as $1,000 per month as part of the scheme. 9/27/17 Tr. 45:22-24; 48:20-22. By contrast, Defendant has multiple college degrees,

39

ECF No. 204 ¶ 84; earned millions in profits, *id.* ¶ 17; and admitted in her May 2, 2017 plea agreement "I ran the operations of both companies [involved in the fraud scheme] on a daily basis, and *I directed and controlled the activities of the employees in all their tasks*." ECF No. 165 at 3 (emphasis added). Defendant's attempt to pin the fraud scheme on Ramireddi, a low-level employee, is frivolous.

Defendant's mere allegation of ineffective assistance is not a fair and just reason under Ninth Circuit precedent. Rather, the Ninth Circuit has held that a defendant must first demonstrate that counsel's advice was "[e]rroneous or inadequate." *McTiernan*, 546 F.3d at 1167. For example, in *McTiernan*, the Ninth Circuit concluded that because the defendant had demonstrated a suppression motion was at least a "realistic possibility," counsel's failure to advise the defendant about such a motion constituted a fair and just reason for the defendant to withdraw his plea. *Id.* at 1167–68. By contrast, Defendant's declaration and papers provide no basis to conclude that Meltzer should have considered the viability of an advice of counsel defense. *See Davis*, 428 F.3d at 806 (holding that a defendant must first demonstrate that counsel was ineffective before a district court may consider whether counsel's actions constitute a "fair and just reason" to withdraw guilty plea). The Court therefore rejects Defendant's allegation.

### 4. Conflict of Interest

Defendant also suggests—in a footnote—that Meltzer may not have ensured "careful, precise communication" with Defendant. Mot. at 12 n.3. Defendant discusses "the magnitude of the language barrier in this case," but does not outright allege that Meltzer was ineffective or argue that her alleged language barrier constitutes a fair and just reason to withdraw her guilty plea. *Id.* Regardless, the record contradicts any such suggestion, as set forth below.

Relatedly, in her reply, Defendant for the first time contends that Meltzer created a conflict of interest because Defendant's husband, Venkat, was present at some of Meltzer's meetings with Defendant. Reply at 7. Defendant contends that this conflict is the "most important[]" inadequacy in Meltzer's representation and spends more than six full pages of her reply brief on the issue. *See id.* at 7–13. Yet despite the issue's apparent importance, Defendant never raised a conflict of

interest in her opening brief. Nor did Defendant make any such suggestion at the December 18, 2018 hearing where she asserted her intent to withdraw her guilty plea, ECF No. 300, or in any of the Ninth Circuit filings where Defendant said she "could" move to withdraw her guilty plea.

It is well established that a "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see also United States v. Van Dyck*, 866 F.3d 1130, 1136 (9th Cir. 2017) (same); *Gulec v. Boeing Co.*, 698 F. App'x 372, 373–74 (9th Cir. 2017) (same).

While represented by current counsel, Defendant repeatedly—on February 1, 2018; March 15, 2018; and March 23, 2018—told the Ninth Circuit that she "could" withdraw her guilty plea. Ninth Circuit Appeal 17-10533, Dkts No. 9-1, 18, 19, 23. Thus, Defendant and current counsel had clearly discussed the possibility of a motion to withdraw guilty plea before February 1, 2018. Defendant's current counsel stated at the December 18, 2018 resentencing hearing that he and Defendant had spoken over the phone multiple times and that counsel had flown from Washington, D.C. to meet with Defendant in person about a possible motion to withdraw guilty plea. 12/18/18 Tr. 4:20-23. Yet, even though current counsel has represented Defendant for more than a year and Defendant has hinted at the possibility of a motion to withdraw guilty plea for more than a year, Defendant waited until her reply brief to raise her "most important" argument.

Therefore, the Court exercises its discretion to decline to consider Defendant's argument first raised in reply. *Van Dyck*, 866 F.3d at 1136. The reasons for doing so are manifest: Defendant's delay prejudices the government, which cannot respond to Defendant's contentions. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir. 2004) (noting the "obvious" prejudice to the opposing party when a party first raises a claim in a reply brief).

Nonetheless, the Court observes that even though Defendant's conduct has deprived the government of an opportunity to address Defendant's argument, Defendant's own emails to Meltzer contradict Defendant.

For one, the more than one hundred pages of substantive emails between Meltzer and Defendant attached to both the government's opposition and Defendant's reply were written

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

entirely in English.  *See generally* Meltzer Decl., Exs.; Reply Exs. A-N.  In one email, in order to help cooperate, Defendant wrote multiple paragraphs to Meltzer in English in which she explained "here is the info I came across when I worked with other vendors/businesses/peers," and then described the operations of other businesses.  Meltzer Decl., Ex. 4.  In addition, Defendant's emails show that she researched analogous criminal cases in English, read her plea agreement in English, read the draft PSR in English, and drafted detailed objections in English to the draft PSR in English.  Meltzer Decl., Ex. 6; *see, e.g.*, *id.* ("The word stating 'Paragraph 31' should be replaced as 'Paragraph 30, line 11 to 14 and Paragraph 31.'").

Defendant's current counsel represented in a motion for an extension of the filing deadlines for the instant motion that Defendant "is incarcerated and speaks little English."  ECF No. 293 at 2.  However, in Defendant's motion to withdraw her guilty plea, Defendant's counsel represents that Defendant is "conversant in English."  Mot. at 12 n.3.

At the May 3, 2017 change of plea hearing, Defendant responded to numerous questions in English, even though the Court provided an interpreter.  *See, e.g.*, 5/3/17 Tr. 5:20-6:8; 6:16; 7:8-12.  In fact, when the Court asked for Defendant's plea, Defendant answered "Guilty" in English.  *Id.* 29:20-23.

At the same hearing, Meltzer explained that he and Defendant had "communicated by e-mail without any problems and she's seen every draft of this plea agreement and we've discussed every draft of this plea agreement."  5/3/17 Tr. 3:18-23.  Defendant raised no objection, affirmed that Meltzer had answered her questions about possible defenses and the possibility of trial, and affirmed that she was satisfied with Meltzer's services.  *Id.* 16:20-17:4.  Similarly, in the plea agreement, Defendant confirmed that "I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested."  Plea Agreement at 10.  Therefore, the record contradicts any inference that Defendant suffered from a language barrier that rendered her guilty plea involuntary.

The record also demonstrates that *Defendant* requested that Venkat be present for Defendant's meetings with Meltzer.  For example, on December 9, 2015, in the course of pre-

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

indictment plea negotiations, Defendant wrote to Meltzer,

> "Yes, as we discussed, we would like to proceed for 5K consideration. I understand that they don't want to commit anything pre-proffer session. You might have known that Venkat is leaving to India tomorrow for family urgency (his dad is ill) and he'll be back on Jan 4th. I'll be ready for proffer session *after he comes back*."

Meltzer Decl., Ex. 4 (emphasis added). Accordingly, Meltzer acquiesced, and responded that he was "working on getting a new date so that we can postpone the meeting until after Venkat returns." *Id.* Leeming, Venkat's counsel, also declared that "[Defendant] and her husband, Venkat Guntipally, regularly met with both Mr. Meltzer and me at their request." Leeming Decl. ¶ 9. Defendant's declaration is consistent with this account: Defendant attests that Venkat regularly attended Defendant's meetings with Meltzer, but Defendant avoids saying who requested the arrangement. *See* Guntipally Decl. ¶ 10. Nor does Defendant make any showing that "an actual conflict of interest adversely affected [her] lawyer's performance" or that Venkat ever interpreted a word incorrectly. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). The record thus contradicts Defendant's untimely arguments.

In sum, Defendant has not carried her burden to demonstrate that Meltzer provided improper legal advice and has not shown a fair and just reason for withdrawal of her guilty plea.

### 5. Evidentiary Hearing

Finally, because the record conclusively contradicts all of Defendant's allegations of ineffective assistance, Defendant has not demonstrated any entitlement to an evidentiary hearing. *See United States v. Jackson*, 254 F. App'x 659, 659 (9th Cir. 2007) (holding that a district court was not required to conduct an evidentiary hearing on a motion to withdraw guilty plea where "the district court had sufficient evidence to reach an informed decision"). Here, the parties have provided hundreds of pages of Defendant's emails and several declarations in addition to the evidence already in the record, all of which contradict Defendant's self-serving allegations that lack support and credibility. Thus, the existing record is more than sufficient for the Court to evaluate Defendant's motion. *See United States v. Gonzalez*, 113 F.3d 1026, 1028 (9th Cir. 1997) (holding that to exercise its discretion, a court must first "conduct an inquiry adequate to create a

43

sufficient basis for reach an informed decision").

### D. Prejudice to Government

The advisory committee's notes to Federal Rule of Criminal Procedure 32 also list several

factors that courts should consider when evaluating a defendant's motion to withdraw her guilty

plea. *See* Fed. R. Crim. P. 32 advisory committee's note (1983). Both the Ninth Circuit and the

United States Supreme Court have cited the advisory committee's notes with approval. *See*

*McTiernan*, 546 F.3d at 1167; *Hyde*, 520 U.S. at 676–77. Per the advisory committee, if a

defendant establishes a fair and just reason to withdraw her guilty plea, "it is then appropriate to

consider whether the government would be prejudiced by withdrawal of the plea." Fed. R. Crim.

P. 32 advisory committee's note (1983). Because Defendant has not shown a fair and just reason

to withdraw her guilty plea, the Court need not consider this factor.

However, Defendant's long delay has prejudiced the government. Defendant's delay

affects the availability of two insider witnesses important to the government's case against

Defendant, Ramireddi and Kondamoori.

Ramireddi self-surrendered for her 14-month sentence on December 29, 2017. ECF No.

220. Because more than 14 months have elapsed since December 2017, Ramireddi has served her

sentence and lacks the same incentive to testify against Defendant. Moreover, Ramireddi may

have been deported following her sentence, and thus unavailable to testify against Defendant. *See*

ECF No. 182 at 3 (judgment in Ramireddi's case stating that although the Court imposed a three-

year term of supervised release, "upon release from imprisonment, the defendant will likely be

deported and will not be in the United States to be supervised").

The same may be true of Kondamoori by the time a trial were to occur. ECF No. 196 at 3

(judgment in Kondamoori's case stating that although the Court imposed a three-term of

supervised release, "upon release from imprisonment, the defendant will likely be deported and

will not be in the United States to be supervised"); ECF No. 193 ¶ 51 (Kondamoori's acceptance

of responsibility statement in PSR acknowledging his likely deportation). To date, Kondamoori

has served more than a year of his 20-month sentence, which may be shorter if Kondamoori

United States District Court
Northern District of California

Case No. 16-CR-00189-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA

receives good time credit. Although Defendant does not focus on Kondamoori's utility to the government (perhaps because Kondamoori has not filed a § 2255 motion to support Defendant's motion to withdraw), the Court noted at Kondamoori's sentencing that Kondamoori "provided additional details about the Guntipallys' scheme that [Ramireddi] could not provide, so his cooperation was above and apart from what [Ramireddi] could provide." 10/25/17 Tr. 30:14-17.

In addition, Defendant's delayed motion also deprives the government of the opportunity to provide incentives to Ramireddi or Kondamoori under Federal Rule of Criminal Procedure 35(b). Under that rule, "[u]pon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). More than a year has passed since Ramireddi's and Kondamoori's sentencings, which renders Rule 35(b) moot and deprives the government of an additional carrot to encourage the codefendants to testify against Defendant. ECF Nos. 180, 194.

Finally, in Defendant's plea agreement, Defendant attested that she understood that "the government will not preserve any physical evidence obtained in this case" in exchange for Defendant's plea of guilty. Plea Agreement at 5. Thus, the government may not have preserved physical evidence for Defendant's case. Opp. at 37. For all of the above reasons, Defendant's nineteen-month delay has prejudiced the government.

### E. Procedural Inequities

Defendant contends that the Court's handling of the briefing schedule for Defendant's motion to withdraw is a "procedural inequity." Reply at 24 & n.15. Defendant raises two principal issues: (1) the Court set an expedited briefing schedule; (2) the Court favored the government's requests over Defendant's requests. *Id.* at n.15. Neither contention has merit.

First, as the Court has explained at length, Defendant waited nineteen months and until the day of resentencing to attempt to withdraw her guilty plea. On the day of resentencing, the Court delayed the hearing at the request of Defendant's current counsel, Mark Schamel. ECF No. 290. At the resentencing, Schamel requested "ten days" to brief Defendant's motion. 12/18/18 Tr.

45

United States District Court
Northern District of California

5:22-23. Had the Court agreed, Defendant's motion to withdraw her guilty plea would have been due December 28, 2018. The Court initially gave Defendant much longer to file her motion. ECF No. 291. However, upon further reflection, the Court set an expedited briefing schedule "to avoid contributing to any prejudice" from Defendant's delayed motion. ECF No. 292. Specifically, the Court set the motion filing deadline as January 4, 2019; January 23, 2019 for the opposition; and January 30, 2019 for the reply. The Court set the hearing for February 13, 2019. *Id.* Thus, the Court's January 4, 2019 deadline for Defendant's motion still gave Defendant a full week longer than Defendant's initial request for a December 28, 2018 filing deadline. *See id.*

Second, Defendant failed to file Defendant's declaration with Defendant's motion to withdraw guilty plea on January 4, 2019. Thus, the Court gave Defendant an additional two weeks to file Defendant's declaration by January 18, 2019. ECF No. 304.

Any extensions the Court granted the government resulted only from Defendant's own dilatoriness. For example, the Court only granted the government's request for an extension of the January 23, 2019 opposition filing deadline to February 6, 2019 because of *Defendant*'s failure to file a declaration with her January 4, 2019 motion to withdraw guilty plea, or even to commit to filing that declaration by a date certain. ECF No. 304. As a result, the Court also extended Defendant's deadline to reply from January 30, 2019 to February 13, 2019, and the hearing from February 13, 2019 to February 27, 2019. *Id.* Defendant appears to object to the Court's grant of the government's request to continue the hearing date from February 13, 2019 to February 27, 2019. *See* Reply at n.15. However, Defendant herself consented to the government's request for an extension of the briefing deadlines, which required an extension of the motion hearing date. ECF No. 301 at 1. The Court could not have held a hearing on February 13, 2019 when Defendants' reply was due the same day.

Therefore, the Court rejects the inference that the Court has contributed to any procedural inequities in this case or that the Court's briefing deadlines on Defendant's long-delayed motion to withdraw guilty plea constitute a fair and just reason for Defendant to withdraw her plea.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to withdraw her guilty plea.

**IT IS SO ORDERED.**

Dated:  March 8, 2019

_____
LUCY H. KOH
United States District Judge